2005 ND 179

Keith A. ERNST & Debra L. Egge, in their own rights and interests and as assignees of Shane Kadoun, d/b/a Kadoun Hardwood Flooring, Plaintiffs and Appellants

v.

ACUITY, a Mutual Insurance Company as insurer of Shane Kadoun, d/b/a Kadoun Hardwood Flooring, Defendant and Appellee.

No. 20050128.

Supreme Court of North Dakota.

Oct. 24, 2005.

Bruce A. Schoenwald, Stefanson, Plambeck, Foss & Fisher, Moorhead, MN, for plaintiffs and appellants.

Erin M. Conroy (argued) and Richard N. Jeffries (on brief), Jeffries, Olson & Flom, PA, Fargo, ND, for defendant and appellee.

Opinion of the Court by MARING, Justice.

MARING, Justice.

[¶ 1] Keith Ernst and Debra Egge have appealed from a summary judgment dismissing their action seeking recovery of insurance proceeds. We affirm, concluding coverage was excluded by a business risk exclusion in the policy.

I

[¶ 2] In 2003, Ernst and Egge (collectively "Ernst") purchased approximately 2,300 square feet of pre-finished maple flooring for their home. They contracted with Shane Kadoun, doing business as Kadoun Hardwood Flooring, to install the flooring, and paid Kadoun $8,000.

[¶ 3] After Kadoun had installed approximately half of the flooring, Ernst became concerned about the quality of Kadoun's workmanship and whether he was following the manufacturer's installation instructions. Ernst alleges Kadoun did not properly prepare the subflooring, failed to properly acclimatize the flooring, did not leave expansion joints, failed to cull out defective boards, and used improper fasteners which caused the installed boards to split and lift. Ernst also contends Kadoun intended to install a portion of the flooring parallel to the floor joists. Ernst claims that, as a result of Kadoun's failure to follow the manufacturer's instructions, the flooring was uneven and unstable, with low spots, high spots, loose boards, and uneven boards.

[¶ 4] When Ernst questioned the quality of the work and the deviations from the manufacturer's instructions, Kadoun walked off the job and abandoned the project. Upon the recommendation of a representative of the flooring manufacturer and other hardwood flooring specialists, Ernst had the flooring Kadoun had installed removed and reinstalled new flooring.

[¶ 5] In March 2003, Ernst sued Kadoun for damages for improper installation of the flooring. Ernst sought recovery for the costs of removal of the improperly installed flooring, purchase of replacement flooring, and installation of the new flooring. Kadoun tendered defense of the claim to Acuity, from whom he had acquired a commercial general liability insurance policy. Acuity denied coverage and refused to accept defense of the claim against Kadoun. Ernst and Kadoun ultimately agreed to a *Miller–Shugart* settlement of the claim, whereby Kadoun agreed to pay $10,000 to Ernst and agreed to entry of judgment against him for an additional $18,116.53 plus costs and attorneys fees, with the judgment only to be collected from the proceeds of his insurance policy with Acuity.

[¶ 6] Ernst then commenced garnishment proceedings and served a supplemental complaint upon Acuity, seeking recovery of the judgment from the proceeds of the policy. On cross-motions for summary judgment, the trial court concluded there was no coverage under the policy, because Kadoun's conduct was not an "occurrence" under the policy and also fell within a policy exclusion. The court granted Acuity's motion for summary judgment, and judgment was entered dismissing Ernst's action against Acuity. Ernst appealed, alleging that Kadoun's conduct constituted an occurrence under the policy and that no policy exclusions apply to defeat coverage.

II

[¶ 7] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no disputed genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Miller v. Diamond Res., Inc.*, 2005 ND 150, ¶ 8, 703 N.W.2d 316. Whether the trial court properly granted summary judgment is a question of law that we review de novo on the entire record. Id.

[¶ 8] The interpretation of an insurance contract is a question of law that is fully reviewable on appeal, and we independently examine and construe the contract to determine whether the district court's interpretation is erroneous. *State v. North Dakota State Univ.*, 2005 ND 75, ¶ 12, 694 N.W.2d 225; *Nationwide Mut. Ins. Cos. v. Lagodinski*, 2004 ND 147, ¶ 7, 683 N.W.2d 903. When a case involves the legal effect of terms in an insurance contract, we fully review the issues on appeal by independently examining the policy to determine if there is coverage. *Nationwide*, at ¶ 7.

[¶ 9] We have summarized our standards for construing an insurance policy:

Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*North Dakota State Univ.,* 2005 ND 75, ¶ 12, 694 N.W.2d 225 (quoting *Ziegelmann v. TMG Life Ins. Co.,* 2000 ND 55, ¶ 6, 607 N.W.2d 898).

[¶ 10] Exclusions from coverage in an insurance contract must be clear and explicit and are to be strictly construed against the insurer. *North Dakota State Univ.,* 2005 ND 75, ¶ 13, 694 N.W.2d 225; *Grinnell Mut. Reinsurance Co. v. Lynne,* 2004 ND 166, ¶ 22, 686 N.W.2d 118. We will not rewrite a contract to impose liability on an insurer if the policy expressly and unambiguously excludes coverage. *North Dakota State Univ.,* at ¶ 13.

### III

[¶ 11] Ernst contends the trial court erred in concluding that Kadoun's improper installation of the flooring was not an "occurrence" which would trigger coverage under the policy and in concluding that, even if it was an occurrence, coverage was expressly excluded. Acuity argues that Kadoun's conduct was not an occurrence under the policy and that coverage is precluded by both intentional act and business risk exclusions to the policy. We conclude that coverage for the damages sought by Ernst is expressly and unambiguously excluded under a business risk exclusion to the policy. For purposes of this appeal, we will assume, without deciding, that Kadoun's actions constituted an occurrence which would otherwise trigger coverage under the policy.

[¶ 12] The relevant policy provision is exclusion k(5), which provides that coverage does not apply to property damage to:

That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations . . . .

[¶ 13] This Court construed a virtually identical business risk exclusion in *Grin-*

*nell Mut. Reinsurance Co. v. Lynne,* 2004 ND 166, 686 N.W.2d 118. In *Grinnell,* a homeowner had hired a contractor to raise his house off its foundation, remove the old foundation, and construct a new foundation under the house. While the house was lifted, it fell off of support jacks and dropped approximately three feet into the basement. The homeowner sued the contractor for damages to the house, and the contractor's insurer, Grinnell, denied coverage based upon the business risk exclusion.

[¶ 14] In concluding that the business risk exclusion precluded coverage for damages to the house, this Court noted that the purpose of such exclusions "is to prevent policyholders from converting liability insurance into protection from foreseeable business risks" and that "[a] commercial liability insurance policy is not meant to act as a warranty of the insured's work." *Grinnell,* 2004 ND 166, ¶¶ 16, 18, 686 N.W.2d 118. Quoting from *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.,* 203 Ga.App. 508, 417 S.E.2d 197, 200 (1992), the Court distinguished damages occurring to the project itself from damage to property other than the completed project:

The exclusions from coverage for property damage contained in paragraphs j., m. and n. and other similar exclusions in the CGL policy are generally referred to as "business risk" exclusions, and are designed to exclude coverage for defective workmanship by the insured causing damage to the project itself. *Gary L. Shaw Builders v. State Auto. Mut. Ins. Co.,* 182 Ga.App. 220, 223 (355 S.E.2d 130) (1987); *Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.,* 187 Ga.App. 670 (371 S.E.2d 144) (1988). The principle behind such exclusions is based on the distinction made between two kinds of risk incurred by a contractor such as Donmac. The first is the business risk borne by the

contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the CGL policy, and the "business risk" exclusions in the policy make this clear. *Gary L. Shaw, supra* at 224, 355 S.E.2d 130. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which CGL coverage is contemplated. *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 791 (N.J.1979). "While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting.... The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage [applicable under the CGL policy] is for tort liability for ... [injury to persons and damage to other property] and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained...."

*Grinnell,* at ¶ 18.

[¶ 15] Applying this distinction between damage to the project itself and damage to other property, the Court concluded that the "particular part of real property" the contractor was working on was the entire house. *Id.* at ¶ 25. Accordingly, the Court held that any and all damage to the house resulting from the contractor's work was not covered because it was excluded under the business risk exclusion. *Id.*

[¶ 16] The clear holding of *Grinnell* is that the business risk exclusion precludes coverage for damages to the project itself and to the cost of repairing defective work. As succinctly stated in 9A Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* § 129.12 (3d ed.1997), business risk exclusions exclude coverage for "the expense of restoring, repairing, or replacing the insured's defective work." All of the damages claimed by Ernst relate to the cost of removing and replacing Kadoun's defective work. Although claimed damage to the flooring and baseboards constitutes damage to property, it is damage to the project itself or damage directly related to the repair or replacement of the defective work. Under these circumstances, we conclude the business risk exclusion applies and precludes coverage.

[¶ 17] Ernst argues that, under *Fisher v. American Family Mut. Ins. Co.,* 1998 ND 109, 579 N.W.2d 599, the exclusion should be strictly construed against Acuity and coverage found. In *Fisher,* the Court considered application of a business risk exclusion similar to the one in this case. The Court interpreted the policy provision to include a temporal element and concluded that it "excludes coverage only for property damage during the time [the contractor] worked upon the property." *Id.* at ¶ 10. Because the damages in *Fisher* did not arise until several months after the con-

tractor had completed the project, the Court concluded the exclusion did not apply. *Id.*

[¶ 18] The dispositive factor in *Fisher* was that the problems with the floor did not arise until several months after the project had been completed, and therefore the temporal element was missing. In *Grinnell,* the Court considered but explained that the holding in *Fisher* "dealt with whether damages had to occur while work was still in progress." *Grinnell,* 2004 ND 166, ¶ 25, 686 N.W.2d 118. Because the damages to the house in *Grinnell* occurred before the contractor had completed the project, the Court held that *Fisher* did "not affect the result." *Grinnell,* at ¶ 25.

[¶ 19] The damages claimed in this case occurred while Kadoun was still working on the project. Ernst questioned Kadoun about the defective workmanship and failure to follow the manufacturer's instructions when Kadoun had installed approximately half of the flooring, and Kadoun then abandoned the project without completing it. Accordingly, as in *Grinnell,* the temporal element under the exclusion is satisfied.

[¶ 20] We conclude that exclusion k(5) expressly and unambiguously precludes coverage for the claimed damages, and summary judgment dismissing Ernst's claim against Acuity was appropriate. We have considered other issues raised by the parties and find them to be either unnecessary to our decision or without merit. The judgment dismissing the action against Acuity is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., and DONOVAN J. FOUGHTY, D.J.

[¶ 22] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.