2006 ND 187

**ACUITY, a Mutual Insurance Company, Plaintiff and Appellant**

v.

**BURD & SMITH CONSTRUCTION, INC., Defendant**

and

**Midwest Family Mutual Insurance Company, Chad and Rebecca Caillier, Intervenors and Appellees**

and

**Peter L. Johnson and Suzanne M. Larkin, Intervenors.**

**No. 20060001.**

Supreme Court of North Dakota.

Aug. 24, 2006.

Troy A. Wolf, Oppegard, Wolf & Quinton, Moorhead, MN, for plaintiff and appellant.

Daniel J. Frisk (appeared), Bredahl, Fisher, Frisk & Grande, Fargo, ND, and Sean J. Mickelson (argued), Terhaar, Ar-

chibald Pfefferle Griebel, LLP, Minneapolis, MN, for intervenors and appellees.

CROTHERS, Justice.

[¶ 1] ACUITY appeals from a summary judgment declaring it was obligated under a commercial general liability insurance ("CGL") policy to indemnify its insured, Burd & Smith Construction, Inc., for Burd & Smith's responsibility for damages to an apartment building owned by Chad and Rebecca Caillier. We conclude the CGL policy does not provide coverage to repair or replace a defective roof on the apartment building, but does provide coverage for other property damage to the apartment building. We modify the judgment accordingly, and as modified, we affirm.

I

[¶ 2] The Cailliers sued Burd & Smith and Mark Ehley, alleging the Cailliers contracted with Burd & Smith as a general contractor and Ehley as a subcontractor or employee of Burd & Smith to replace a roof on an apartment building owned by the Cailliers. The City of Fargo issued a building permit to Burd & Smith, as the contractor, to "[r]eplace the roof of the existing apartment complex." The permit said the "contractor [would] be replacing tar and gravel with [a] new rubber roof." The Cailliers alleged Burd & Smith and Ehley failed to exercise reasonable care in replacing the roof, including failing to secure the premises against foreseeable water damage, and breached their contract for replacement of the roof. The Cailliers essentially claimed that while replacing the roof, Ehley failed to protect the apartment building from rainstorms, which caused extensive water damage to the interior of the building. Additionally, two building tenants claimed they sustained property loss as a result of water damage and also sued Burd & Smith and Ehley.

[¶ 3] Burd & Smith was insured under a CGL policy issued by ACUITY during the time covered by allegations in the Cailliers' complaint. ACUITY provided Burd & Smith with a defense in the Cailliers' action under a reservation of rights and answered the Cailliers' complaint, denying that Burd & Smith had contracted with the Cailliers and that Burd & Smith had any involvement with Ehley's work on the apartment building. Ehley did not answer or appear in the Cailliers' action. The two tenants' claims were settled before trial. The district court entered a directed verdict finding Ehley had breached his contract with the Cailliers, and the Cailliers' negligence claim was not submitted to a jury. A jury found Ehley was not acting as Burd & Smith's employee or agent when he entered into the contract with the Cailliers; however, the jury found Burd & Smith had ratified Ehley's contract with the Cailliers and awarded them $370,000 in damages. The district court thereafter concluded the jury's finding that Burd & Smith had ratified Ehley's contract with the Cailliers was manifestly contrary to the greater weight of the evidence and granted Burd & Smith's motion for a new trial.

[¶ 4] ACUITY then commenced this action against Burd & Smith seeking a declaration that the CGL policy did not provide coverage for the Cailliers' damages in the underlying action. Burd & Smith did not answer or appear in ACUITY's declaratory judgment action; however, the Cailliers and their insurer, Midwest Family Mutual Insurance Company, intervened. ACUITY moved for summary judgment. While ACUITY's motion for summary judgment was pending, the Cailliers and Burd & Smith entered into an agreement under *Miller v. Shugart*, 316

N.W.2d 729 (Minn.1982), in which Burd & Smith consented to a judgment of $412,788.45 against it on the condition any recovery would be collected only from the proceeds of the CGL policy. *See also Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151 (N.D.1992). The agreement said that as a result of water intrusion into the apartment building, the Cailliers sustained $412,788.45 in "property damage, lost rental income and additional expenses related to providing alternate living arrangements for several tenants in the [b]uilding."

[¶ 5] The district court denied ACUITY's motion for summary judgment and granted the Cailliers summary judgment, concluding ACUITY was obligated to indemnify Burd & Smith for Burd & Smith's responsibility for damages to the apartment building. The court ruled there was coverage under the insuring provisions of the CGL policy because the Cailliers' claim against Burd & Smith in the underlying action constituted an "occurrence." The court decided that the "contractual liability" exclusion did not exclude coverage because Burd & Smith's liability was not an assumed contract under the language of that exclusion. The court also decided two "damage to property" exclusions were ambiguous and construed them against ACUITY and in favor of Burd & Smith to not exclude coverage for Burd & Smith's responsibility for damages to the apartment building.

## II

■ [¶ 6] We review this appeal in the posture of summary judgment, which is a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Grinnell Mut. Reinsurance Co. v. Lynne,* 2004 ND 166, ¶ 9, 686 N.W.2d 118. Whether a district court properly granted summary judgment is a question of law that we review de novo on the record. *Ernst v. Acuity,* 2005 ND 179, ¶ 7, 704 N.W.2d 869.

■ [¶ 7] The issues raised in this appeal involve the interpretation of ACUITY's CGL policy with Burd & Smith, which is a question of law fully reviewable on appeal. *See Fisher v. American Family Mut. Ins. Co.,* 1998 ND 109, ¶ 5, 579 N.W.2d 599. We independently examine and construe an insurance contract to determine whether there is coverage. *Id.* In *State v. North Dakota State Univ.,* 2005 ND 75, ¶ 12, 694 N.W.2d 225 (quoting *Ziegelmann v. TMG Life Ins. Co.,* 2000 ND 55, ¶ 6, 607 N.W.2d 898), we summarized our standards for construing an insurance contract:

Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give

effect to every part, and each clause is to help interpret the others.

## III

[¶ 8] The CGL policy requires ACUITY to pay "those sums that [Burd & Smith] becomes legally obligated to pay as damages because of bodily injury, [or] property damage ... to which this insurance applies." The policy provides that the insurance applies "[t]o bodily injury or property damage only if: (a) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[¶ 9] The coverage provided by ACUITY's CGL policy is subject to several exclusions which, as relevant to the issues raised in this appeal, provide:

This Insurance does not apply to:

. . . .

b. Contractual Liability

Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an insured contract, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement.

. . . .

k. Damage to Property

Property damage to:

. . . .

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

## A

■ [¶ 10] Relying on *Grinnell,* 2004 ND 166, ¶¶ 16–18, 686 N.W.2d 118, ACUITY argues the Cailliers' claims against Burd & Smith are grounded in breach of contract and are not within the scope of coverage provided under the CGL policy. ACUITY argues the Cailliers' claims for damages are based on allegations of defective workmanship, which does not constitute an accidental "occurrence" under the coverage provisions of the CGL policy.

[¶ 11] ACUITY's reliance on *Grinnell* is misplaced because there we were interpreting exclusions from liability and not the scope of coverage of a CGL policy. Nevertheless, in both *Grinnell,* 2004 ND 166, ¶ 18, 686 N.W.2d 118, and *Ernst,* 2005 ND 179, ¶ 14, 704 N.W.2d 869, we discussed the purposes of a CGL policy and, in the context of discussing exclusions from liability, distinguished damages occurring to the insured's work product or project itself from damage to property other than the work product or project:

The exclusions from coverage for property damage ... are generally referred to as "business risk" exclusions, and are designed to exclude coverage for defective workmanship by the insured causing damage to the project itself. The principle behind such exclusions is based on the distinction made between two kinds of risk incurred by a contractor. . . . The first is the business risk borne by the contractor to replace or

repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the CGL policy, and the "business risk" exclusions in the policy make this clear. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which CGL coverage is contemplated. "While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting.... The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage [applicable under the CGL policy] is for tort liability for ... [injury to persons and damage to other property] and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."

*Grinnell,* at ¶ 18 (internal citations omitted) (quoting *Glens Falls Ins. Co. v. Don-* *mac Golf Shaping Co., Inc.,* 203 Ga.App. 508, 417 S.E.2d 197, 200 (1992)).

[¶ 12] As that quotation explains, a CGL policy is not intended to insure business risks that are the normal, frequent, or predictable consequences of doing business and which businesses can control and manage. *See* 2 Rowland H. Long, *The Law of Liability Insurance* § 10.01[1] (2006). A CGL policy does not insure the insured's work itself; rather, it insures consequential damages that stem from that work. *Id.* As a result, a CGL policy may provide coverage for claims arising out of tort, breaches of contract, and statutory liabilities as long as the requisite accidental occurrence and property damage are present. *See* 2 Long, at § 10.01[2]; 20 Eric Mills Holmes, *Holmes' Appleman on Insurance* §§ 129.1[C] and 129.2[B] (2d ed.2002); Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies,* 30 Tort & Insurance Law Journal 785, 787–89 (1995).

[¶ 13] In *American Family Mut. Ins. Co. v. American Girl, Inc.,* 2004 WI 2, ¶¶ 37–49, 268 Wis.2d 16, 673 N.W.2d 65, the Wisconsin Supreme Court considered an insurer's argument that faulty workmanship was not an accidental occurrence and contractual losses were not "occurrences" under the insuring provisions of a CGL policy. The court said the policy's coverage language did not support a distinction between a tort and a contract for purposes of deciding whether a loss was within an initial grant of coverage and an occurrence was not defined by the legal category of the claim. *Id.* at ¶ 41. The court said if losses actionable in contract were never an occurrence for purposes of an initial grant of coverage, the business risk exclusions later in a policy would be entirely unnecessary. *Id.* at ¶ 47. *See also Vandenberg v. Superior Ct.,* 21

Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229, 244 (1999) (stating coverage controlled by nature of damage and risk involved in light of particular policy provision). The rationale of *American Girl* is consistent with our rules for interpreting insurance contracts to give meaning to every word and phrase, if possible, and we reject ACUITY's claim that breach of contract claims are not per se within the scope of coverage of a CGL policy.

■ [¶ 14] The issue in this case turns on whether there has been property damage caused by an "occurrence" under the policy. ACUITY does not dispute there is property damage as that term is defined in the CGL policy, and the issue is whether the property damage was caused by an "occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident." In the context of the interpretation of an insurance policy, we have defined "accident" as "happening by chance, unexpectedly taking place, not according to the usual course of things." *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208, 216 (N.D. 1979) (quoting *Continental Cas. Co. v. Jackson,* 400 F.2d 285, 288 (8th Cir.1968)). *See also Kasper v. Provident Life Ins. Co.,* 285 N.W.2d 548, 553 (N.D.1979).

[¶ 15] Some courts have held that defective workmanship, standing alone, which results in damages only to the work product itself is not an accidental occurrence under a CGL policy. *J.Z.G. Res., Inc. v. King,* 987 F.2d 98, 101–02 (2d Cir. 1993); *Pursell Constr., Inc. v. Hawkeye–Security Ins., Co.,* 596 N.W.2d 67, 70–71 (Iowa 1999); *Auto–Owners Ins. Co. v. Home Pride Cos., Inc.,* 268 Neb. 528, 684 N.W.2d 571, 576–79 (2004); *McAllister v. Peerless Ins. Co.,* 124 N.H. 676, 474 A.2d 1033, 1036–37 (1984); *Heile v. Herrmann,*

136 Ohio App.3d 351, 736 N.E.2d 566, 568 (1999); *L–J, Inc. v. Bituminous Fire & Marine Ins. Co.,* 350 S.C. 549, 567 S.E.2d 489, 493 (Ct.App.2002). In *Auto–Owners,* 684 N.W.2d at 578, the Nebraska Supreme Court said that a CGL policy does not provide coverage for faulty workmanship that damages only the insured's work product, but "if faulty workmanship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred and coverage exists." *See also King,* 987 F.2d at 101–03 (distinguishing cases that allege faulty workmanship alone and cases that allege damage to property other than the work product); *Pursell,* 596 N.W.2d at 71 (claimed damages limited to contractor's work product and were not accidental occurrence); *McAllister,* 474 A.2d at 1036–37 (claimed damages were for cost of correcting defective landscaping work with no claim that defects had caused damage to property other than the work product); *Heile,* 736 N.E.2d at 568 (claimed damages all related to contractors own work, not to consequential damages stemming from that work); *L–J, Inc.,* 567 S.E.2d at 493 (faulty workmanship that causes damage to property other than work product is covered accidental occurrence).

■ [¶ 16] We agree with the rationale of those courts holding that faulty workmanship causing damage to property other than the work product is an accidental occurrence for purposes of a CGL policy. That rationale is consistent with the coverage risks for a CGL policy and the plain and ordinary language of the policy. We conclude property damage caused by faulty workmanship is a covered occurrence to the extent the faulty workmanship causes bodily injury or property damage to property other than the insured's work product.

[¶ 17] Here, the Cailliers alleged damage to the interior of the apartment building. We conclude that claim is the type of risk covered by a CGL policy and constitutes an "occurrence" under ACUITY's policy. We therefore conclude the Cailliers' claim against Burd & Smith is within the coverage provisions of ACUITY's CGL policy.

### B

[¶ 18] ACUITY's policy does not apply to contractual liability for "bodily injury or property damage for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement." ACUITY argues this "contractual liability" provision excludes coverage for any potential liability Burd & Smith would have based on a contract ratification theory. In *Fisher*, we said "[t]he key to understanding this exclusion, and its very important exception, is the concept of liability 'assumed' by the insured," and "[I]n the CGL policy and other liability policies an 'assumed' liability is generally understood and interpreted by the courts to mean the liability *of another* which one 'assumes' in the sense that one agrees to indemnify or hold the other person harmless therefor." 1998 ND 109, ¶ 9, 579 N.W.2d 599 (emphasis original) (quoting 2 Long, at § 10.05[2] ).

[¶ 19] This record does not support ACUITY's claim that Burd & Smith assumed liability under a contract in the sense that Burd & Smith agreed to indemnify or hold Ehley harmless. *Fisher* controls this issue, and we conclude the "contractual liability" exclusion does not exclude coverage for the Cailliers' claimed damages.

### C

[¶ 20] ACUITY argues both "damage to property" exclusions unambiguously exclude coverage for the Cailliers' claimed damages against Burd & Smith in the underlying action. Exclusion k(5) specifically excludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operation." Exclusion k(6) specifically excludes coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it."

[¶ 21] The district court concluded the phrases "the particular part of real property" in exclusion k(5) and "that particular part of any property" in exclusion k(6) were ambiguous because they could be interpreted to encompass damage to the entire building, or damage to only the roof of the building. The court thus construed the exclusions to obligate ACUITY to indemnify Burd & Smith for Burd & Smith's responsibility for damages to the apartment building.

[¶ 22] ACUITY argues the district court's interpretation is contrary to this Court's decisions in *Grinnell* and *Ernst* and to the overwhelming weight of the authority from other jurisdictions that have interpreted and applied those two "damage to property" exclusions. ACUITY claims those exclusions are clear and unambiguous and exclude coverage for all the Cailliers' claimed damages to the insured's work product, which ACUITY argues is the entire apartment building.

[¶ 23] In construing those exclusions, we reiterate that a CGL policy is not a performance bond and is not intended to protect a contractor's business risk to replace or repair defective work that does not conform to the agreed contractual requirements; rather, the policy is intended

to protect the insured from liability because the insured's goods, products, or work cause bodily injury or damage to property other than the insured's work product. *Ernst,* 2005 ND 179, ¶ 14, 704 N.W.2d 869; *Grinnell,* 2004 ND 166, ¶ 18, 686 N.W.2d 118. *See* Long, at § 10.01[1].

[¶ 24] Consistent with that purpose, other courts have generally construed those property damage exclusions to exclude coverage when the property damage is to the property on which the insured has contracted to perform operations and not to exclude coverage when the property damage is to property that the insured was not performing operations on. *See Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 603–04 (5th Cir.1991); *Southwest Tank and Treater Mfg. Co. v. Mid–Continent Cas. Co.,* 243 F.Supp.2d 597, 603–04 (E.D.Tex. 2003); *American Equity Ins. Co. v. Van Ginhoven,* 788 So.2d 388, 391 (Fla.Ct.App. 2001); *Glens Falls,* 417 S.E.2d at 201; *Pekin Ins. Co. v. Willett,* 301 Ill.App.3d 1034, 235 Ill.Dec. 350, 704 N.E.2d 923, 926–27 (1998); *Goldsberry Operating Co., Inc. v. Cassity, Inc.,* 367 So.2d 133, 134–35 (La.Ct.App.1979); *Jet Line Services, Inc. v. American Employers Ins. Co.,* 404 Mass. 706, 537 N.E.2d 107, 111 (1989); *Vinsant Elec. Contractors v. Aetna Cas. & Sur. Co.,* 530 S.W.2d 76, 77–78 (Tenn. 1975). Some courts have specifically recognized that facts in each case are determinative of the particular part of property on which an insured is performing its operations and that buildings may be divided into parts in attempting to determine which part or parts are the object of the insured's work product. *See Goldsberry,* 367 So.2d at 134; *Vinsant,* 530 S.W.2d at 77–78. A common thread for deciding whether there is coverage for property damage is the scope of the insured's contract. *See Hartford Cas. Co.,* 938 F.2d at 603; *Van Ginhoven,* 788 So.2d at 391;

*Goldsberry,* 367 So.2d at 134; *Jet Line,* 537 N.E.2d at 111.

[¶ 25] In *Van Ginhoven,* 788 So.2d at 390, the Florida Court of Appeals considered similar property damage exclusions. The court said although some of the terms in those exclusions were not defined in the policy, the terms were clearly understandable, especially because they were modified by other language in the exclusions. *Id.* at 390–91. The court concluded the exclusions were clear and unambiguous. *Id.* at 391. In that case, the insured was hired to make spot repairs to a swimming pool, clean the pool surface, and replace up to six tiles in the pool, which required the insured to drain the pool. *Id.* at 389. While the insured was draining the pool, water table pressure caused the pool to pop out of the ground, which resulted in damages to the pool, pump, heating system, deck, screen enclosure, and surrounding sprinkling system and landscaping. *Id.* The court held the property damage exclusion excluded coverage for damage to the pool because the insured was working on the pool at the time of the damage. *Id.* at 390–91. However, because the insured was not working on the plumbing, electrical, deck, patio, screen enclosure, or residence, there was coverage for damage to those items. *Id.* at 391.

[¶ 26] We agree with the rationale of *Van Ginhoven* that the terms of these exclusions are not ambiguous when construed in their entirety to give meaning and effect to each word and clause and when construed to effectuate the purpose of CGL policies. We disagree with ACUITY's argument that the entire apartment building is the insured's work product or project because that argument ignores the limiting language "particular part of real property" in exclusion k(5) and "particular part of any property" in exclusion k(6). The ordinary meaning of "particular" is

"of, relating to, or being a single person or thing," and "one unit or element among others." *Merriam–Websters Collegiate Dictionary* 903 (11th ed.2005). The same source defines "part" as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole." *Id.* at 902–03. Those definitions limit "particular part" to a single unit or piece of property which together constitute the whole property. When those words are considered together and with the other language in the exclusions, they limit the scope of the exclusions to the particular part of real property on which the insured is performing operations, if the property damage arises out of those operations, and to the particular part of any property that must be restored, repaired, or replaced because the insured's work was incorrectly performed on it. As applied to the case, the record reflects the contract was to replace the roof on the apartment building and not to do any work on any other particular part of the apartment building.

[¶ 27] We conclude the roof is the particular part of the real property on which the insured was performing operations and is the particular part of the property on which the insured's work was incorrectly performed. Any damages for repair or replacement of a defective roof are excluded from coverage under the CGL policy, but damages to the interior of the apartment building are not the "particular part" of the real property or any property as used in exclusions k(5) and (6). That interpretation is consistent with the purposes of a CGL policy and gives effect to the plain and ordinary meaning of each word and clause in those exclusions.

[¶ 28] Our interpretation here is consistent with *Grinnell* and *Ernst*. In *Grinnell*, 2004 ND 166, ¶¶ 31–34, 686 N.W.2d 118, on appeal, the insured raised an issue

about separating the house from the foundation for purposes of determining property damage. However, we held the issue was not adequately briefed or argued on appeal and was waived. *Id.* at ¶ 33. In *Grinnell*, the insured's contract required the entire house to be lifted from the foundation in order to perform the contracted work on the foundation and the "particular part of the real property" the contractor was working on was the entire house. *Id.* at ¶ 25. Here, the contract was to replace the roof and did not involve work to the interior of the building. In *Ernst*, 2005 ND 179, ¶¶ 5, 16, 704 N.W.2d 869, all the claimed damage was to remove defectively installed flooring, purchase replacement flooring, and install the new flooring, and we held an exclusion identical to k(5) excluded coverage. Coverage was excluded in *Ernst* because the claimed damage was to the insured's work product, the floor.

[¶ 29] Here, the district court judgment declared ACUITY was obligated to indemnify Burd & Smith for its responsibility for damages to the apartment building. As applied to this case, we conclude exclusions k(5) and (6), when read in their entirety, exclude coverage for repairing or replacing a defective roof on the apartment building, but do not exclude coverage for other property damage to the building. To the extent the Cailliers claim damages to replace or repair defective roofing, we conclude coverage is excluded under the policy. The judgment states that ACUITY "has an obligation under the terms of its policy with Burd and Smith Construction, Inc. to indemnify Burd and Smith Construction, Inc. for its responsibility for the damages occurring to the Cailliers' apartment building, which occurred in September 1999." To the extent the judgment could be read to include damage to the roof of the apartment building, we modify the judgment to read: "ACUITY

has an obligation under the terms of its policy with Burd and Smith Construction, Inc. to indemnify Burd and Smith Construction, Inc. for its responsibility for the damages occurring to the Cailliers' apartment building, which occurred in September 1999, excluding damages to the roof."

## IV

[¶ 30] We conclude the CGL policy provides coverage for damage to the interior of the apartment building and excludes coverage for repairing or replacing the defective roof. We modify the judgment accordingly, and as modified, we affirm.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ. concur.