FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 18, 2022
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 35

Larry Pavlicek,                                                  Plaintiff and Appellee

v.

American Steel Systems, Inc., Gabriel

Construction Services, LLC, Door Pro, Inc.,

Dickinson Ready-Mix, Co., and

JRC Construction, LLC,                                              Defendants

     and

Grinnell Mutual Reinsurance Company,           Garnishee and Appellant

## No. 20210116

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Craig E. Johnson, Fargo, ND, for plaintiff and appellee.

Chris A. Edison (argued) and Matthew S. Menge (on brief), Bismarck, ND, for garnishee and appellant.

**Crothers, Justice.**

[¶1]   Grinnell Mutual Reinsurance Company appeals from a district court judgment ordering it to pay Larry Pavlicek $214,045.55 under a commercial general liability insurance (CGL) policy Grinnell had with JRC Construction. Grinnell argues the district court misinterpreted the insurance policy. Grinnell claims it is not required to indemnify JRC Construction because its work product was defective. We affirm in part, reverse in part and remand.

I

[¶2]   In 2013, Pavlicek hired a contractor to construct a steel building on his property. JRC Construction installed the concrete floor and floor drain for the project. Another subcontractor installed the in-floor heating system for the concrete floor. Throughout the project, Grinnell insured JRC under a CGL policy, effective from July 30, 2012 through July 30, 2013.

[¶3]   After JRC completed the floor drain, it failed to properly install the concrete floor, and its attempts to repair the concrete damaged the drain. Pavlicek sued JRC for breach of contract relating to the defective work. After a December 2017 trial, the jury awarded Pavlicek $217,244.55 in damages against JRC for replacement of the concrete floor, drain and in-floor heating system.

[¶4]   In February 2020, Pavlicek filed a supplemental complaint against Grinnell, alleging it was required to satisfy the judgment as JRC's insurer. Grinnell claimed it had no obligation to indemnify JRC under the CGL policy. Grinnell asserted Pavlicek's damages were not covered under the CGL policy.

[¶5]   Pavlicek and Grinnell waived trial, relying on evidence from the 2017 trial and interpretation of the insurance policy. The district court concluded JRC's defective work on the concrete floor was not covered under the CGL policy. The court concluded the damage to the floor drain was covered under

the policy. The court found the floor drain could only be repaired by removing and replacing the concrete floor. The court also found replacement of the floor would destroy the in-floor heating system. Because removal and replacement of the floor and in-floor heat were necessary to repair the drain the court concluded the CGL policy covered all of those costs. The court concluded the CGL policy covered $214,045.55 of the $217,244.55 judgment awarded to Pavlicek.

## II

[¶6]   The district court made findings of fact and conclusions of law on the basis of the evidence presented at the 2017 trial.

> "In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations. Findings of the trial court are presumptively correct."

*Gimbel v. Magrum*, 2020 ND 181, ¶ 5, 947 N.W.2d 891 (cleaned up).

## III

[¶7]   Grinnell argues the district court erred in its interpretation of the CGL policy. Grinnell claims the policy does not cover the cost of replacing the concrete floor, in-floor heating system and floor drain. Grinnell also contends the policy excludes coverage for damage to JRC's work.

[¶8]   Grinnell's arguments involve the interpretation of its CGL policy with JRC, which is a question of law fully reviewable on appeal. *ACUITY v. Burd & Smith Constr., Inc.*, 2006 ND 187, ¶ 7, 721 N.W.2d 33. We have summarized our standards for construing an insurance contract:

"Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others."

*Id.* S*ee also* N.D.C.C. §§ 9-07-02, 9-07-03, 9-07-06.

[¶9] When interpreting an insurance policy, we will first examine the coverages provided by the policy before examining a policy's exclusions from coverage. *K & L Homes, Inc. v. Am. Fam. Mut. Ins. Co.*, 2013 ND 57, ¶ 9, 829 N.W.2d 724. If a coverage provision applies to the harm at issue, then we will review the policy's exclusions and limitations of coverage. *Id.* "Exclusions from coverage in an insurance contract must be clear and explicit and are strictly construed against the insurer." *Id.* at ¶ 8 (quoting *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 9, 816 N.W.2d 31). Although a policy's exclusionary provisions are strictly construed, this Court will not rewrite a policy to impose liability on the insurer when the policy unambiguously excludes coverage. *K & L Homes,* at ¶ 8.

[¶10] Here, the CGL policy provides coverage for property damage caused by the insured if the property damage results from an occurrence during the policy period. The CGL policy defines "property damage" as: "(a) [p]hysical injury to tangible property, including all resulting loss of use of that property; or (b) [l]oss of use of tangible property that is not physically injured." "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Accident has been defined as

3

"happening by chance, unexpectedly taking place, not according to the usual course of things." *ACUITY*, 2006 ND 187, ¶ 14 (quoting *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208, 216 (N.D. 1979)). "[P]roperty damage caused by faulty workmanship is a covered occurrence to the extent the faulty workmanship causes bodily injury or property damage to property other than the insured's work product." *ACUITY*, at ¶ 16.

[¶11] The CGL policy contains several exclusions to coverage, including a "Damage To Your Work" exclusion. The damage to your work exclusion states the insurance does not apply to: "'Property Damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"

[¶12] The CGL policy defines "[y]our work" as "[w]ork or operations performed by you or on your behalf." "Products-completed operations hazard" is defined as:

> "a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:
>
>> (a) When all of the work called for in your contract has been completed.
>>
>> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>>
>> (c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

4

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

[¶13] In *Fisher v. Am. Fam. Mut. Ins. Co.*, 1998 ND 109, ¶ 15, 579 N.W.2d 599, this Court construed a similar damage to your work exclusion:

"The injury to products or work exclusion is intended to exclude insurance for damage to the insured's product or work, but not for damage caused by the insured's product or work. Thus, the exclusion does not apply where the product or work causes damages to other persons or property. In such a situation, while there would not be coverage for damage to the work or product itself, damages caused by the product to other work or products would be covered.

"The injury to work or products exclusion is consistent with the goal of the CGL, which is to protect the insured from the claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or products."

(quoting 3 Rowland H. Long, *The Law of Liability Insurance* § 11.09[2] (1998)).

A

[¶14] Grinnell argues the district court erred in concluding the CGL policy covered the damage to the floor drain. Grinnell claims the damage to your work exclusion of the CGL policy excludes the damage to the drain because the drain was JRC's work as defined in the policy.

[¶15] The declarations page of the CGL policy provides coverage for "Products-Completed Operations" in the aggregate limit of $2,000,000. The policy includes an endorsement stating: "The most we will pay for . . . [a]ll 'bodily injury' or 'property damage' that is included in the 'products-completed operations hazard' arising from all 'occurrences' during the policy period is the amount of the Products-Completed Operations Aggregate limit stated in the Declaration." Although the CGL policy excludes from coverage "products-completed operations hazard" within the damage to your work exclusion, when

5

a conflict exists between the provisions of an insurance policy and an attached endorsement, the provisions of the endorsement prevail. *Hart Constr. Co. v. Am. Fam. Mut. Ins. Co.*, 514 N.W.2d 384, 391 (N.D. 1994). Therefore, the CGL policy provides $2,000,000 of aggregate coverage for damage resulting from an accident or occurrence, including during products-completed operations.

[¶16] The district court found JRC installed the floor drain and the drain was functioning properly before and after JRC poured the concrete floor. The court found JRC damaged the drain when it attempted to repair its faulty workmanship on the floor. The court found JRC damaged the drain housing and plugged the drain with the concrete materials JRC attempted to flush through the system. The court found JRC's work on the drain was complete and was "not associated with [JRC's] faulty workmanship on the floor." The court found the damage to the drain was "damage to property other than the insured's work product" and was not excluded under the CGL policy.

[¶17] The district court erred in finding the drain was "property other than the insured's work product." Under the CGL policy's definition of "[y]our work," the drain was "[w]ork or operations performed by [JRC]." However, the court did not err in finding the drain was a completed product as defined in the policy. The drain had been completed and put to its intended use before being damaged by JRC's attempt to repair the damaged concrete floor.

[¶18] The CGL policy excludes coverage for property damage to "[y]our work," but provides coverage for "Products-Completed Operations." As to the damage to the floor drain, the policy can be construed to provide coverage because the drain was a completed product and excluded from coverage because the drain was JRC's work. Exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer. *K & L Homes*, 2013 ND 57, ¶ 8; *see also Heitkamp v. Milbank Mut. Ins. Co.*, 383 N.W.2d 834, 837 (N.D. 1986) (stating if one interpretation of the policy imposes liability on the insurer and the other will not, the interpretation favorable to the insured will be adopted). Here, the CGL policy can be read to include and exclude coverage for the damage to the floor drain. Therefore, under our cases the policy must be construed to provide coverage for the cost to repair and replace the floor

drain. We affirm that part of the judgment holding the CGL policy covers the cost of repairing and replacing the floor drain.

B

[¶19] Grinnell argues the district court erred in concluding the CGL policy covered the replacement of the concrete floor.

[¶20] In its discussion on the damage to the concrete floor, the district court found the damage to the floor was caused by JRC's faulty workmanship and did not constitute "property damage" or an "occurrence" under the CGL policy. The court concluded Grinnell was not liable for JRC's faulty work on the concrete floor.

[¶21] After discussing damage to the in-floor heating system and the floor drain, the district court concluded:

> "While Grinnell has no obligation to fix JRC's defective floor when focused only on fixing the floor, the analysis does change as it relates to other parts of this project. The only possible way that the floor drain can be repaired is to rip out the entire floor. Ripping the floor out to repair the drain will also destroy the heating tubes. This is what the jury awarded overall to give Pavlicek complete relief. Thus, this Court finds that removal of the floor is necessary and is a damage properly covered under the insurance policy because this is the only way to fix the drain. Thus removal and replacement of the floor, replacement of the heating tubes, and fixing the drain are all properly covered under JRC's policy with Grinnell."

[¶22] The district court initially found JRC's faulty workmanship caused the damage to the concrete floor and the CGL policy did not cover the damage. The court later found removal and replacement of the floor was the only way to fix the drain and was therefore covered under the CGL policy. In making this latter finding, the court noted the jury awarded Pavlicek the total cost of replacing the floor, heating system and drain "to give Pavlicek complete relief."

[¶23] We have stated:

7

> "[A] CGL policy is not a performance bond and is not intended to protect a contractor's business risk to replace or repair defective work that does not conform to the agreed contractual requirements; rather, the policy is intended to protect the insured from liability because the insured's goods, products, or work cause bodily injury or damage to property other than the insured's work product."

*ACUITY*, 2006 ND 187, ¶ 23 (citing *Ernst v. Acuity*, 2005 ND 179, ¶ 14, 704 N.W.2d 869; *Grinnell Mut. Reinsurance Co. v. Lynne*, 2004 ND 166, ¶ 18, 686 N.W.2d 118). A CGL policy does not cover an insured's economic loss due to repairing or replacing its own defective work. *Fisher*, 1998 ND 109, ¶ 15 (citing 3 Long, *The Law of Liability Insurance* § 11.09[2]); *see also ACUITY*, 2006 ND 187, ¶ 16 (stating faulty workmanship causing damage to property other than the insured's defective work product is a covered occurrence under a CGL policy).

[¶24] When addressing the damage to the concrete floor, the district court found the damage was caused by JRC's faulty workmanship and the CGL policy did not cover the damage because there was no "occurrence" under the policy. That finding has not been appealed. Although the CGL policy provides coverage to repair the floor drain, it does not cover the cost of replacing the concrete floor because that damage was the result of JRC's defective work. The court erred in finding the CGL policy covered the entire concrete floor replacement because replacement of the floor was the only way to repair the floor drain. We reverse that part of the judgment holding the CGL policy covers the cost of replacing the concrete floor.

C

[¶25] Grinnell contends the district court erred in concluding the cost of replacing the in-floor heating system was a covered occurrence under the CGL policy. Grinnell argues the heating tubes did not suffer property damage during the policy period.

[¶26] The district court discussed the in-floor heating system:

8

"Grinnell also has raised the fact that there is no damage to the in-floor heating and that in fact such actually works as planned. The problem is that once the concrete sets, there is no practical way to remove the concrete absent destroying the heat tubes. In order to fully compensate and give to Pavlicek what he is entitled to have under his contract with JRC, the entire concrete floor must be ripped out and replaced. In having to remove the concrete floor due to the poor workmanship of JRC, there will be damage to the in-floor heat tubes and the work product of Plumbers, Inc. will basically be destroyed.

"What is certain is that in order to give Pavlicek what he had bargained for, there will be a complete loss of the heating system that had been installed by Plumbers, Inc. The reason that the heating tubes will be lost is due to the poor workmanship in pouring and finishing the concrete floor as was done by JRC. While the heating system at the time of trial currently functioned, it is clear that it will be destroyed upon replacing the concrete floor that was poured by JRC. The future damage is certain and qualifies as property damage and occurrence under the terms of the policy. Further, since the damage is certain, it also qualifies for an occurrence during the policy period."

[¶27] The CGL policy provides coverage if property damage is caused by an occurrence during the policy period. Property damage is physical injury to property or the loss of use of property under the CGL policy. "[T]he well-settled rule that the time of the occurrence of an accident, within the meaning of a liability indemnity policy, is not the time when the wrongful act was committed, but the time when the complaining party was actually damaged." *Grinnell Mut. Reinsurance Co. v. Thies*, 2008 ND 164, ¶ 11, 755 N.W.2d 852 (quoting *Friendship Homes, Inc. v. American States Ins. Cos.*, 450 N.W.2d 778, 780 (N.D. 1990)).

[¶28] Pavlicek testified at trial the in-floor heating system functioned, the entire floor was heated and there had been no problems with the floor heat after JRC poured the concrete floor. The district court also noted the in-floor heat functioned at the time of trial. However, to give Pavlicek what he bargained for, the court found the heating system will be damaged and will require replacement when the concrete floor is replaced.

[¶29] The district court did not find the heating system was damaged during the policy period, but it concluded the CGL policy covered the future damage "to fully compensate and give to Pavlicek what he is entitled to have under his contract with JRC." A CGL policy is not a performance bond. *ACUITY*, 2006 ND 187, ¶ 23. Because the in-floor heating system was not damaged during the policy period, there was no "occurrence" under the CGL policy. The court erred in concluding the CGL policy provided coverage for replacement or repair of the in-floor heating system beyond that which may be necessary to repair the drain. We reverse that part of the judgment holding the CGL policy covers the cost of replacing the in-floor heating system.

D

[¶30] The judgment ordered Grinnell to pay Pavlicek $214,045.55. The CGL covers the cost of replacing the floor drain, but does not cover the cost to replace the concrete floor or the in-floor heating system. The judgment does not break down the separate costs to replace the concrete floor, in-floor heating system and floor drain. A JRC invoice shows Pavlicek paid $7,600 for the floor drain installation; however, the parties have not provided evidence relating to the cost of repairing or replacing the floor drain. We remand to the district court to determine those damages.

IV

[¶31] The parties' remaining arguments are either not necessary to our decision or are without merit. The judgment is affirmed in part, reversed in part, and remanded.

[¶32] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte

10