2001 ND 94

**Craig RASK and Leslie Rask, Plaintiffs and Appellees,**

v.

**NODAK MUTUAL INSURANCE COMPANY, Defendant and Appellant.**

**No. 20000311.**

Supreme Court of North Dakota.

May 22, 2001.

Tracy Vigness Kolb and Jerry W. Evenson (argued) of Zuger Kirmis & Smith, Bismarck, ND, for defendant and appellant.

Jeffrey R. Hannig of Hannig & Associates, Moorhead, for plaintiffs and appellees.

NEUMANN, Justice.

[¶ 1]   Nodak Mutual Insurance Company ("Nodak Mutual") appealed from a summary judgment.  Because the district court correctly concluded the vehicle involved in the underlying action was an underinsured motor vehicle as a matter of law, we affirm.

## I

[¶ 2]   On November 28, 1998, near Carrington, North Dakota, Amy Davis, Miranda Hagen, Ashley Rask, Beth Sondag, and Chynna Wass were involved in a one-car accident.   Chynna Wass and her father, Randall Wass, owned the vehicle. Beth Sondag was driving with Chynna Wass's permission at the time of the accident.   Chynna Wass was a passenger and was killed.   Ashley Rask was also killed. Amy Davis and Miranda Hagen sustained personal injuries.   The four passengers, or their legal representatives, sued Beth Sondag.

[¶ 3]   Randall Wass was the named insured under a State Farm Mutual Insurance Company ("State Farm") policy, and the vehicle involved in the accident was an insured vehicle under the policy.   The State Farm policy provided liability limits of $100,000 for each person and $300,000 for each accident.   As a permissive user, Sondag was an insured under the State Farm policy.

[¶ 4]   Sondag was also an insured under her parents' policy with Center Mutual Insurance Company ("Center Mutual"). The Center Mutual policy also provided liability limits of $100,000 for each person and $300,000 for each accident.   Thus, under the State Farm and Center Mutual policies, Sondag had available liability coverage totaling $200,000 per person and $600,000 per accident.

[¶ 5]   In September 1999, the lawyers representing the four claimants agreed on a distribution plan for the $600,000 available under the two insurance policies. State Farm and Center Mutual paid the funds to the claimants according to the agreement, each paying a total of $300,000. The heirs of Ashley Rask received $187,500.   The heirs of Chynna Wass received $187,500.   Miranda Hagen received $160,000.   Amy Davis received $65,000.

State Farm and Center Mutual each paid half of the total amount to each claimant.

[¶ 6]   Leslie Rask, the mother of Ashley Rask, was the named insured under a Nodak Mutual policy providing various types of coverage, including underinsured motor vehicle coverage of $100,000 per person and $300,000 per accident.

[¶ 7]   After Leslie and Craig Rask settled their wrongful death claim against Sondag, the Rasks' attorney notified Nodak Mutual of the settlement.   Nodak Mutual informed the Rasks' attorney that there was no basis for an underinsured motorist claim.

[¶ 8]   The Rasks sued Nodak Mutual for underinsured motorist benefits, claiming Ashley Rask was a passenger in an underinsured motor vehicle.   The Rasks moved the district court for partial summary judgment.   The district court granted partial summary judgment, concluding the vehicle involved in the accident was an underinsured motor vehicle, but leaving open the issue of damages.   The Rasks and Nodak Mutual stipulated to damages to resolve that issue for purposes of appealing the summary judgment.   Based on that stipulation an appealable final judgment was entered.

[¶ 9]   On appeal, Nodak Mutual argues the district court erred as a matter of law in determining the vehicle involved in the accident was an underinsured motor vehicle.   In particular, Nodak Mutual contends the court erred by not considering both the State Farm and the Center Mutual policies, and the payments made under each of them, in its determination of whether the vehicle was underinsured.

## II

[¶ 10]   Summary judgment is appropriate if the only issues to be resolved are questions of law.   *Ziegelmann*

*v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 5, 607 N.W.2d 898. Interpretation of an insurance policy, including whether it is ambiguous, is a question of law that is fully reviewable on appeal. *Id.* at ¶ 5. We review a district court's interpretation of an insurance policy by independently examining and construing the policy. *DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 19, 603 N.W.2d 906. We look first to the language of the policy as a whole, and if the language is clear on its face, our inquiry is at an end. *Dundee Mut. Ins. Co. v. Marifjeren*, 1998 ND 222, ¶ 9, 587 N.W.2d 191.

[¶ 11] The Nodak Mutual policy's insuring clause pertaining to underinsured motor vehicle coverage provides:

**We** will pay damages for **bodily injury:**

1. caused by accident; and

2. arising out of the maintenance or use of an **under-insured motor vehicle.**

These must be damages an **insured:**

1. has not been compensated for; and

2. is legally entitled to recover from the owner or driver of an **under-insured motor vehicle.**

"Under-insured motor vehicle" is defined in the policy as follows:

**Under-insured Motor Vehicle** means a **motor vehicle** for which there is a bodily injury liability insurance policy, or bond providing equivalent liability protection, in effect at the time of the accident, but the applicable limit of bodily injury liability of such policy or bond:

a. is less than the applicable limit for under-insured motorist coverage under this policy; or

b. has been reduced by payments to other **persons** who sustained **bodily injury** in the accident to an amount less than the limit for under-insured motorist coverage under this policy.

[¶ 12] Nodak Mutual argues the district court erred in failing to consider the legislative intent of the statutory definition of underinsured motor vehicle under N.D.C.C. § 26.1–40–15.1(2). Nodak Mutual argues the district court erroneously looked only to the Nodak Mutual policy in determining whether Nodak Mutual was obligated to pay the Rasks benefits under the policy.

[¶ 13] Questions of statutory construction are questions of law and are fully reviewable on appeal. *Ash v. Traynor*, 2000 ND 75, ¶ 4, 609 N.W.2d 96. The primary purpose of statutory construction is to ascertain the intent of the legislature. *Douville v. Pembina County Water Res. Dist.*, ND 2000 124, ¶ 9, 612 N.W.2d 270. In ascertaining legislative intent, we look first to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. *Id.* at ¶ 9. If the plain language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. *Lawrence v. N.D. Workers Comp. Bureau*, 2000 ND 60, ¶ 19, 608 N.W.2d 254. Thus, the same general rule applies when we interpret either statutes or contracts. *Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 130 n. 6 (N.D.1987) (quoting N.D.C.C. § 1–02–02, "[w]ords used in any statute are to be understood in their ordinary sense" and N.D.C.C. § 9–07–02, "[t]he language of a contract is to govern its interpretation"). Accordingly, we will not look beyond the plain language of the policy and statutory definitions of underinsured motor vehicle if the language is clear on its face.

[¶ 14] The statutory definition of an underinsured motor vehicle is virtually identical to the definition provided by the Nodak Mutual policy. Under N.D.C.C. § 26.1–40–15.1(2):

> "Underinsured motor vehicle" means a motor vehicle for which there is a bodily injury liability insurance policy, or bond providing equivalent liability protection, in effect at the time of the accident, but the applicable limit of bodily injury liability of such policy or bond:
>
> a. Is less than the applicable limit for underinsured motorist coverage under the insured's policy; or
>
> b. Has been reduced by payments to other persons injured in the accident to an amount less than the limit for underinsured motorist coverage under the insured's policy.

The only substantive difference between the policy definition and the statutory definition is subsection (b) of the policy uses "who sustained bodily injury" and subsection (b) of the statute uses "injured." For purposes of this appeal, the distinction is irrelevant.

[¶ 15] The district court concluded that in determining whether a vehicle is an underinsured motor vehicle, the only policy to consider is the policy insuring the motor vehicle involved in the accident—in this case, the Wass State Farm policy.

[¶ 16] Nodak Mutual argues the policy and statutory definitions (collectively "definition") of underinsured motor vehicle require the applicable limits for bodily injury liability available to the injured person be less than the injured person's own underinsurance coverage. Nodak Mutual asserts the definition provides that underinsured motorist coverage does not apply until the limits of all available bodily injury liability bonds and policies have been exhausted, and the definition must be interpreted to include not only multiple motor vehicle liability policies, but all types of liability policies. Nodak Mutual asserts the Wass vehicle is not underinsured because the amounts the Rasks received through the State Farm policy insuring the vehicle and the Center Mutual policy insuring the driver totaled $187,500, and therefore exceeded Nodak Mutual's underinsurance coverage limit of $100,000.

[¶ 17] The definition of underinsured motor vehicle is not ambiguous. Under the plain language of the definition, it is an underinsured motor vehicle, not an underinsured motor vehicle operator, that must be involved in the accident. It is the insured status of the vehicle that is determinative, not the insured status of the operator. To look to the insured status of the driver rather than the vehicle would render meaningless the language under N.D.C.C. § 26.1–40–15.3(1) requiring the damages arise "out of the ownership, maintenance, or use of such underinsured motor vehicle." Because the accident did not arise out of the ownership, maintenance, or use of any of the vehicles owned by the Sondags and insured by Center Mutual, it would be inappropriate to look to those vehicles to determine whether the Wass vehicle involved in the accident was underinsured. The definition provides an underinsured motor vehicle is one for which there is a bodily injury liability policy, the applicable limit of which has been reduced by payments to other persons to an amount less than Nodak Mutual's limit for underinsured coverage. In this case, the State Farm policy insuring the vehicle fits within this definition. The $93,750 paid to the Rasks under the policy is less than the $100,000 underinsured limit of the Nodak Mutual policy. Therefore, the Wass vehicle was underinsured as a matter of law.

[¶ 18] Nodak Mutual argues the legislative history of N.D.C.C. § 26.1–40–15.1(2) supports a contrary result. However, because the definition of underinsured motor vehicle is unambiguous, we do not consider legislative history. *See Lawrence*, 2000 ND 60, ¶ 19, 608 N.W.2d 254.

[¶ 19] The cases Nodak Mutual relies upon to support its proposition that we should consider all applicable liability policies in determining whether a vehicle is an underinsured motor vehicle are unpersuasive in light of the specific language of the definition of underinsured motor vehicle in this case.

### III

[¶ 20] The district court correctly concluded the vehicle involved was an underinsured motor vehicle. We affirm the district court's judgment.

[¶ 21] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., and GERALD W. VANDE WALLE, C.J., concur.