2007 ND 135

**FARMERS UNION MUTUAL INSURANCE COMPANY,**
Plaintiff and Appellee,

v.

**ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES LIMITED,**
Defendant and Appellant.

**No. 20060303.**

Supreme Court of North Dakota.

Aug. 22, 2007.

Chris A. Edison, Storslee Law Firm, P.C., Bismarck, N.D., for plaintiff and appellee.

Tiffany L. Johnson (argued) and Patrick W. Durick (on brief), Pearce & Durick, Bismarck, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Associated Electric and Gas Insurance Services Limited ("AEGIS") appeals from a summary judgment requiring AEGIS to submit to equitable allocation and intercompany arbitration under N.D.C.C. § 26.1–41–17. Because we conclude AEGIS's issuance of an excess liability policy does not make it a "motor vehicle liability insurer" under N.D.C.C. § 26.1–41–17, we reverse.

I

[¶ 2] In October 2005, Farmers Union Mutual Insurance Company ("Farmers Union") commenced this declaratory judgment action against AEGIS, a "non-admitted surplus lines carrier," seeking a declaration that the equitable allocation and intercompany arbitration provisions of N.D.C.C. § 26.1–41–17 were applicable to AEGIS. AEGIS had insured Plains Marketing, L.P. ("Plains Marketing") under an excess liability policy in an underlying action. In its complaint for declaratory judgment, Farmers Union asserted AEGIS was "transacting business in North Dakota on a surplus lines basis" under the law governing surplus lines insurance. See N.D.C.C. ch. 26.1–44.

[¶ 3] The facts in the underlying action are not in dispute. In March 2001, while driving his car on a North Dakota highway, Caleb Melberg was severely injured in a collision with a crude oil tanker semi-truck. At the time of the collision, Robert Taylor was driving the semi-truck and had entered the highway from a gravel road after leaving a crude oil pipeline station. Taylor was employed by Plains Marketing and was operating the oil tanker truck, owned by Plains Marketing, as a part of his employment.

[¶ 4] Farmers Union insured Melberg under a personal motor vehicle insurance policy, which provided basic no-fault benefits of $30,000. As a result of the severe injuries sustained by Melberg, Farmers Union paid its full $30,000 limit in basic no-fault benefits to Melberg. At the time of the collision, Plains Marketing was insured by Zurich–American Insurance ("Zurich") under a primary commercial liability policy and by AEGIS under an excess liability policy.

[¶ 5] Melberg sued Plains Marketing for the injuries and damages he sustained in the accident. Melberg eventually settled his claim against Plains Marketing. Through a combination of a lump-sum payment and structured settlement, Zurich paid its $1,000,000 policy limits to Melberg, and Plains Marketing paid Melberg $407,370.83. AEGIS thereafter indemnified Plains Marketing for the amount of Plains Marketing's settlement with Melberg.

[¶ 6] In July 2005, Farmers Union filed a request for intercompany arbitration against AEGIS under N.D.C.C. § 26.1–41–17, seeking to recover the $30,000 in no-fault benefits it had paid to Melberg. AEGIS refused Farmers Union's requests for equitable allocation and arbitration. In October 2005, Farmers Union brought this declaratory judgment action against AE-GIS. AEGIS moved to dismiss Farmers Union's action, and Farmers Union moved for summary judgment. The district court denied AEGIS's motion to dismiss and granted Farmers Union summary judgment, holding AEGIS was a "motor vehicle liability insurer" and the equitable allocation and arbitration provisions of N.D.C.C. § 26.1–41–17 applied to AEGIS.

## II

[¶ 7] Summary judgment under N.D.R.Civ.P. 56 is "a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from the undisputed facts, or if resolving disputed facts would not alter the result." *ACUITY v. Burd & Smith Constr., Inc.*, 2006 ND 187, ¶ 6, 721 N.W.2d 33. The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. *Id.* On appeal, we decide "whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law." *Id.* Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Ernst v. Acuity*, 2005 ND 179, ¶ 7, 704 N.W.2d 869.

### III

[¶ 8] AEGIS argues the district court erred in concluding N.D.C.C. § 26.1–41–17 was applicable because AEGIS was an "excess insurer" rather than a "motor vehicle liability insurer." AEGIS also asserts that even if N.D.C.C. § 26.1–41–17 applies, AEGIS still should not be required to participate in binding arbitration because Farmers Union failed to properly commence an arbitration proceeding before the August 1, 2005, effective date of the Legislature's repeal of N.D.C.C. § 26.1–41–17.

[¶ 9] Statutory interpretation is a question of law and fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot,* 2005 ND 136, ¶ 9, 701 N.W.2d 865.

> Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07.... If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids, including legislative history, to determine legislative intent. N.D.C.C. § 1–02–39.

*Stockman Bank of Montana v. AGSCO, Inc.,* 2007 ND 26, ¶ 18, 728 N.W.2d 142. However, we do not consider legislative history when statutory language is unambiguous. *Rask v. Nodak Mut. Ins. Co.,* 2001 ND 94, ¶ 18, 626 N.W.2d 693. "A statute is ambiguous if it is susceptible to meanings that are different, but rational." *Amerada Hess Corp. v. State ex rel. Tax Comm'r,* 2005 ND 155, ¶ 12, 704 N.W.2d 8. If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05. Under N.D.C.C. § 1–01–09, "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears."

[¶ 10] The relevant statute in this case, N.D.C.C. § 26.1–41–17, was repealed by the Legislature effective August 1, 2005, and had authorized a basic no-fault insurer to seek equitable allocation and intercompany arbitration with the motor vehicle liability insurer of a secured person:

> A basic no-fault insurer may recover no-fault benefits paid to or for the benefit of an injured person from *the motor vehicle liability insurer of a secured person* if:
>
> 1. The injured person has sustained a serious injury; or
>
> 2. The injury results from an accident involving two or more motor vehicles, at least one of which is a motor vehicle weighing more than six thousand five hundred pounds [2948.35 kilograms] unloaded.

The right of recovery and the amount thereof must be determined on the basis of tort law without regard to section 26.1–41–08 by agreement between the insurers involved, or, if they fail to agree, by binding intercompany arbitration under procedures approved by the commissioner. The amount of recovery under this section may not exceed the limits of liability of *the secured person's motor vehicle liability insurance policy or other security,* reduced by the amount of the liability for tort claims against the secured person covered by the policy or other security.

(Emphasis added.)

[¶ 11] On appeal, AEGIS argues the phrase "motor vehicle liability insurer" in that statute does not include an excess insurer. AEGIS asserts that while its pol-

icy provides automobile liability coverage, its coverage is incidental to that of the primary liability policy provided by Zurich. Farmers Union responds by urging this Court to adopt a broad interpretation, arguing the phrase "motor vehicle liability insurer or other security" includes any liability coverage, even if provided by an excess liability policy.

■ [¶ 12] We conclude Farmers Union's interpretation of "motor vehicle liability insurer" does not account for the modifying phrases "of a secured person" and "the secured person's" as they are used in N.D.C.C. § 26.1–41–17. Under N.D.C.C. § 26.1–41–01(20) (emphasis added), a secured person is defined as "the owner, operator, or occupant of *a secured motor vehicle*, and any other person legally responsible for the acts or omissions of the owner, operator, or occupant." A secured motor vehicle is defined as "a motor vehicle with respect to which the security *required by this chapter* was in effect at the time of its involvement in the accident resulting in accidental bodily injury." N.D.C.C. § 26.1–41–01(19) (emphasis added). Based upon these definitions, the "motor vehicle liability insurer" contemplated under N.D.C.C. § 26.1–41–17 must be providing the security for the motor vehicle as required under N.D.C.C. ch. 26.1–41.

[¶ 13] Section 26.1–41–02, N.D.C.C., which defines the security required under N.D.C.C. ch. 26.1–41, states, in part:

1. The owner of a motor vehicle required to be registered in this state, or the owner of a motor vehicle operated in this state by the owner or with the owner's permission, shall continuously provide with respect to the motor vehicle during the period in which operation is contemplated in this state *security for payment of basic no-fault benefits and*

*the liabilities covered under the motor vehicle liability insurance.*

2. The *security* may be provided by *an insurance policy complying with this chapter* issued by an insurer authorized to transact business in this state, *or, by self-insurance* as approved by the commissioner.

(Emphasis added.)

[¶ 14] Under N.D.C.C. ch. 26.1–41, an owner of a motor vehicle, registered or operated in this state, must provide security for payment of both "basic no-fault benefits" *and* "liabilities covered under the motor vehicle liability insurance," either by an insurance policy complying with this chapter or by self-insurance.

[¶ 15] Under N.D.C.C. § 26.1–41–01(2), " '[b]asic no-fault benefits' means benefits for economic loss resulting from accidental bodily injury." This section also provides the amounts of benefits payable for the economic loss incurred. *Id.* In providing the applicability of "motor vehicle liability insurance" in the context of chapter 26.1–41, N.D.C.C. § 26.1–41–15(1), provides in part, that such insurance "applies to the amounts which the owner is legally obligated to pay as damages because of accidental bodily injury and accidental property damage arising out of the ownership or operation of a motor vehicle...." This subsection then states, "Motor vehicle liability insurance must afford *limits of liability not less than those required under the financial responsibility laws of this state." Id.* (emphasis added). *See* N.D.C.C. § 39–16.1–11 (defining "motor vehicle liability policy" and providing required coverage and provisions).

[¶ 16] When construed together, the statutory language only permits a no-fault insurer's recovery of no-fault benefits paid from "the motor vehicle liability insurer of a secured person." In using the phrase "of a secured person," and considering the

definition of "secured person," N.D.C.C. § 26.1–41–17 refers to the "security" required by N.D.C.C. ch. 26.1–41. By requiring an insurance policy, or self-insurance, to provide "security" for both basic no-fault benefits and liabilities covered under motor vehicle liability insurance, and by requiring the "motor vehicle liability insurance" to provide liability limits not less than mandated by this state's financial responsibility laws, AEGIS's excess liability policy does not provide the requisite security contemplated by this chapter.

[¶ 17] In *Fuller–Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal.App.4th 958, 38 Cal.Rptr.3d 716, 722 n. 1 (2006) (internal citation omitted), the court explained the difference between an excess liability policy and a primary policy:

> An excess insurance policy serves a different purpose than a primary policy. Whereas primary coverage generally provides immediate coverage upon the occurrence of a loss or event giving rise to liability, excess insurance provides coverage after other identified insurance is no longer on the risk. Excess coverage means coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.

[¶ 18] On appeal, Farmers Union urges this Court to broadly construe the phrase "motor vehicle liability insurance policy or other security" as that phrase is used in N.D.C.C. § 26.1–41–17, to permit Farmers Union to seek equitable allocation from an excess liability insurer. Farmers Union also asserts this broad construction is supported by a legislative intent to include all liability insurance or other security that may be applicable to the accident within the purview of this statute.

[¶ 19] Here, Farmers Union does not dispute AEGIS's policy to Plains Marketing was an excess liability policy. In this declaratory judgment action, Farmers Union asserted AEGIS was transacting business in North Dakota on a surplus lines basis under N.D.C.C. ch. 26.1–44. Farmers Union also asserted AEGIS's policy "was used [by Plains Marketing] to certify compliance with the financial responsibility requirements of the Motor Carrier Act of 1980." Farmers Union points out that one of AEGIS's policy endorsements states it insures for "negligence in the operation, maintenance or use of motor vehicle subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy. . . ."

[¶ 20] While an excess liability policy may provide automobile liability insurance after the limits of a primary liability policy are exhausted, in order to permit a right of recovery under N.D.C.C. § 26.1–41–17, the policy must provide the security required under N.D.C.C. ch. 26.1–41. *Cf. Rask*, 2001 ND 94, ¶¶ 15–19, 626 N.W.2d 693 (concluding that for purposes of triggering UIM coverage under N.D.C.C. ch. 26.1–40, the insured status of the vehicle, rather than the operator is determinative, even though the total amount the injured passenger received from the owner's and driver's liability insurers exceeded the UIM limits).

[¶ 21] Although Plains Marketing may have been required to maintain the AEGIS excess liability policy to comply with federal law, the excess liability policy, and in particular the automobile liability provisions, were not intended to provide the security required under N.D.C.C. ch. 26.1–41. Plains Marketing was indemnified under AEGIS's excess liability policy only after Zurich's $1,000,000 policy limits were exhausted by settlement in the underlying action. Standing alone, AEGIS's excess liability policy did not provide the basic no-fault benefits mandated under N.D.C.C.

ch. 26.1–41, nor did it provide "motor vehicle liability insurance" with liability limits that were not less than this state's financial responsibility laws.

[¶ 22]  Based upon the foregoing, we conclude AEGIS's excess liability policy was not providing the security required by N.D.C.C. ch. 26.1–41. We further conclude based on the plain language of N.D.C.C. § 26.1–41–17, that Farmers Union's payment of no-fault benefits to Melberg does not entitle it to seek equitable allocation from AEGIS under the excess liability policy issued to Plains Marketing.  We hold the district court erred as a matter of law in denying AEGIS's motion to dismiss and in granting Farmers Union summary judgment to require arbitration under N.D.C.C. § 26.1–41–17.

[¶ 23]  Because we hold that the district court erred in denying AEGIS's motion to dismiss, AEGIS's argument that Farmers Union did not timely commence the arbitration proceeding is moot.

IV

[¶ 24]  We reverse the district court judgment.

[¶ 25] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 26]  I respectfully dissent.

[¶ 27]  Under N.D.C.C. § 26.1–41–17, which was repealed effective August 1, 2005, a basic no-fault insurer could recover no-fault benefits paid to an injured person from "the motor vehicle liability insurer of a secured person."  One of our basic rules of construction states that the "[code's] provisions … are to be construed liberally, with a view to effecting its objects and

to promoting justice."  N.D.C.C. § 1–02–01.

[¶ 28]  The Auto Accident Reparations Act defines "secured person" as "the owner, operator, or occupant of a secured motor vehicle, …" N.D.C.C. § 26.1–41–01(20).  A "secured motor vehicle" means "a motor vehicle with respect to which *the security required by this chapter* was in effect at the time of its involvement in the accident resulting in accidental bodily injury."  N.D.C.C. § 26.1–41–01(19) (emphasis added).  The "security required by this chapter," ch. 26.1–41, the Auto Reparations Act, is set forth specifically as follows:

1.  The owner of a motor vehicle required to be registered in this state, or the owner of a motor vehicle operated in this state by the owner or with the owner's permission, shall continuously provide with respect to the motor vehicle during the period in which operation is contemplated in this state security for payment of basic no-fault benefits and the liabilities covered under the motor vehicle liability insurance.

N.D.C.C. § 26.1–41–02(1).

[¶ 29]  Plains Marketing was the owner of the semi-truck, which was insured at the time of this accident for basic no-fault benefits and liability by Zurich–American Insurance.  Plains Marketing was a "secured person" and its semi-truck was a "secured motor vehicle" under the Auto Accident Reparations Act.

[¶ 30]  Under the equitable allocation provision the amount of recovery by Farmers Union may not exceed the "limits of liability of the secured person's motor vehicle liability insurance policy or other security…."  N.D.C.C. § 26.1–41–17.  Plains Marketing's primary motor vehicle liability insurance policy provided by Zurich–American Insurance paid its policy limits in settlement of Taylor's claims.  Ordinarily, this would mean that Farmers Union

would not be able to recover the no-fault benefits it paid. However, Plains Marketing also carried an excess liability policy with AEGIS. Plains Marketing paid part of the settlement with the injured party, and AEGIS indemnified Plains Marketing. AEGIS does not claim that its policy limits were thereby exhausted; therefore, the limits of liability coverage have not been reached.

[¶ 31] "Our no-fault statutes are intended to provide adequate compensation to victims of motor vehicle accidents, and to avoid protracted litigation over issues of fault or causation by removing the bulk of motor vehicle accidents from the tort system." *Haff v. Hettich*, 1999 ND 94, ¶ 33, 593 N.W.2d 383 (citations omitted). In light of the purpose of our no-fault law, it follows that "equitable allocation is a purely statutory remedy between insurers" and "creates a right of equitable allocation directly against the tortfeasor's liability insurer through agreement or intercompany arbitration." *Isaac v. State Farm Mut. Auto. Ins. Co.*, 547 N.W.2d 548, 550 (N.D. 1996) (quoting *Burgener v. Bushaw*, 545 N.W.2d 163, 166–167 (N.D.1996)). I am of the opinion that the majority's interpretation frustrates the public policy and purpose behind the equitable allocation theory. Courts should construe statutes to effectuate the legislative purpose which prompted their enactment.

[¶ 32] The damages covered by basic no-fault benefits are damages that would be recoverable from the tortfeasor and covered under the tortfeasor's liability coverage. After the exhaustion of the Zurich–American Insurance policy limits, AEGIS would be liable for these damages, but for our no-fault law. Our no-fault law established a right of a no-fault carrier to seek reimbursement of basic no-fault benefits from a liability carrier, instead of a right of subrogation. *Isaac*, 547 N.W.2d at 550.

[¶ 33] In this case, the motor vehicle owner, Plains Marketing, had in effect at the time of the accident a policy of motor vehicle liability insurance or "security" with respect to the motor vehicle involved in the accident which provided basic no-fault benefits. Plains Marketing was a "secured person" at the time of the accident. The AEGIS policy provided motor vehicle liability coverage in excess of the motor vehicle liability coverage provided under the Zurich–American Insurance policy. I would interpret "the motor vehicle liability insurer of a secured person" under N.D.C.C. § 26.1–41–17 to include the AEGIS policy as well as the Zurich–American Insurance policy. Under the public policy at the time of the accident, I cannot see why Farmers Union should not be able to recover no-fault benefits it paid from AEGIS' motor vehicle liability coverage.

[¶ 34] I would affirm the judgment of the district court.

[¶ 35] MARY MUEHLEN MARING, J.