# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3350

_____

John Jung; Janice Jung,

                Appellants,

     v.

General Casualty Company of
Wisconsin,

                Appellee.

\* Appeal from the United States
\* District Court for the
\* District of North Dakota.

_____

Submitted: June 15, 2011
Filed: August 9, 2011

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

John and Janice Jung (the Jungs) challenge the denial of their claim for benefits arising from an underinsured motorists (UIM) policy issued by appellee, General Casualty of Wisconsin. The district court[1] granted summary judgment in favor of General Casualty. The Jungs appeal. We affirm.

---

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

## I. BACKGROUND

On November 30, 2006, John Jung (Jung) was seriously injured in a motor-vehicle accident caused by a negligent driver, Richard Martin. At the time of the accident, Jung was driving a 2006 Dodge Ram 2500 pickup owned by his employer, Tooz Construction. The vehicle was covered by an insurance policy Tooz had purchased from General Casualty. The policy included a $1,000,000 UIM endorsement. Martin was driving a 2001 Dodge pickup he owned and insured under a motor-vehicle-liability policy issued by Nodak Mutual Insurance Company. That policy had a liability limit of $250,000 per person and $500,000 per accident. Martin also had an excess-liability policy issued by Nodak Mutual, which had a $1,000,000 limit. The excess-liability policy specifically listed operation of Martin's truck as an insured risk.

On July 30, 2008, the Jungs, Nodak Mutual, and Martin reached a settlement agreement under which the Jungs received $1,250,000. The settlement was paid via two separate checks: one check for $250,000–the full amount of Martin's motor-vehicle-liability policy–and one for $1,000,000–the full value of Martin's excess-liability policy. The Jungs then filed a claim with General Casualty for coverage pursuant to the UIM endorsement. General Casualty denied the Jungs' claim after concluding that Martin's vehicle was not underinsured.

On November 24, 2008, the Jungs filed suit against General Casualty in federal district court. General Casualty moved for summary judgment, arguing that, as a matter of law, Martin's truck was not underinsured. The motion was referred to the magistrate judge[2] who issued a report, recommending that summary judgment be granted. The Jungs filed objections with the district court. After a hearing, the district

---

[2]The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota.

court adopted the magistrate judge's recommendations and granted General Casualty's motion for summary judgment. The Jungs then filed a Request to Certify a Question of Law to the North Dakota Supreme Court. On October 15, 2010, the district court entered an order denying this request. The Jungs appeal the adverse grant of summary judgment and the denial of their request for certification.

## II. DISCUSSION

We review the district court's grant of a motion for summary judgment de novo. Genosky v. Minnesota, 244 F.3d 989, 992 (8th Cir. 2001). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Here, there is a potentially dispositive legal issue; General Casualty is entitled to summary judgment if Martin's vehicle was, as a matter of law, not underinsured. See DeCoteau v. Nodak Mut. Ins. Co., 603 N.W.2d 906, 912 (N.D. 2000). Because we are sitting in diversity, this issue is governed by North Dakota state law. Walker v. Armco Steel Corp., 446 U.S. 740, 747 (1980).

The North Dakota Century Code establishes the minimum standard for UIM coverage in the state, requiring a UIM insurer to compensate an insured for "bodily injury" damages that the insured is legally entitled to collect from the operator of an underinsured motor vehicle, so long as those damages arise "out of the ownership, maintenance, or use" of that vehicle. N.D. Cent. Code Ann. § 26.1-40-15.3(1). The Code goes on to define an underinsured motor vehicle as "a motor vehicle for which there is a bodily injury liability insurance policy, or bond providing equivalent liability protection, in effect at the time of the accident, but the applicable limit of bodily injury liability of such policy or bond [i]s less than the applicable limit for underinsured motorist coverage under the insured's policy." N.D. Cent. Code Ann. § 26.1-40-15.1(2)(a).

Under this "gap" approach to defining underinsured status, a vehicle is only underinsured if the policy limits applicable to that vehicle are less than the UIM coverage in the policy under which the insured seeks benefits. Score v. Am. Family Mut. Ins. Co., 538 N.W.2d 206, 208 (N.D. 1995). Thus, here, the relevant question is whether Martin's truck insured by Nodak Mutual was a "motor vehicle for which there is a bodily injury liability policy" with an applicable limit of *less* than the applicable limit of Jung's $1,000,000 UIM endorsement in the General Casualty policy. It is undisputed that Martin's car was covered by a $250,000 automobile-liability policy issued by Nodak Mutual. If this were the only applicable policy, there would be a gap of $750,000, Martin's vehicle would be underinsured, and summary judgment would be inappropriate. However, General Casualty argues that Martin's personal excess-liability policy is a "bodily injury policy" that applies to the at-fault vehicle and that, therefore, there is $1,250,000 worth of coverage on Martin's car, rendering it, as a matter of law, not underinsured. Thus, our decision here turns on whether, under North Dakota law, Martin's excess-liability policy issued by Nodak Mutual counts as a policy that covers his vehicle for purposes of section 26.1-40-15.1.[3]

---

[3]General Casualty argues that we should look to the definition of "underinsured" found in its policy, which defines a vehicle as underinsured when the "sum of all liability bonds or policies that apply at the time of the accident" are less than the UIM coverage amount. This definition arguably defines the policies relevant to determining whether a vehicle is underinsured more broadly than the North Dakota statute does, referring to the "sum of *all* liability policies" that "apply." The Jungs argue it would be inappropriate for us to look to this policy definition because the statutory underinsurance mandate sets a coverage floor and that an insurer cannot, in effect, provide less coverage by changing the definition of "underinsured." See Sandberg v. Am. Family Ins. Co., 722 N.W.2d 359, 362 (N.D. 2006) (an insurance company cannot provide UIM insurance on terms less favorable than those outlined in the statute). Because we find that the excess-liability policy is relevant under the statutory definition of underinsured, we do not reach this question.

The Jungs argue that this question is controlled by Rask v. Nodak Mut. Ins. Co., 626 N.W.2d 693 (N.D. 2001). In Rask, the North Dakota Supreme Court determined that the at-fault vehicle was underinsured even though the insured collected money in a settlement from two separate insurance policies that, when combined, totaled more than the limit of the insured's UIM policy. The Rask court refused to count one of the policies under which the insured was paid in the underinsurance analysis because it was a liability policy that covered the tortfeasor-driver but had no other connection to the vehicle involved in the accident. The Rask court reasoned that the language of section 26.1-40-15.1 required it to look at the insured status of the motor vehicle, rather than the driver. Id. at 697. The Jungs argue that Rask establishes a general rule that personal-excess-liability policies are not relevant to determining whether a vehicle is underinsured under section 26.1-40-15.1. However, this argument overstates Rask's reach. We read Rask more narrowly and conclude it is distinguishable from the instant case.

Rask involved a tortfeasor who was driving someone else's car. The two policies under which the plaintiff recovered pursuant to the settlement agreement were: (1) the liability policy for the vehicle involved in the accident, which applied because the tortfeasor was a permissive user, and (2) the tortfeasor's automobile- insurance policy, which primarily applied to the tortfeasor's vehicle, but incidentally covered her as the driver of another vehicle. Id. at 695. The Rask court excluded consideration of the second policy because it was only incidentally attached to the at-fault vehicle because the tortfeasor happened to be driving the vehicle. There was no link between the vehicle and the policy except when the tortfeasor happened to be driving as a permissive user. This lack of anything more than an incidental connection between the tortfeasor and the vehicle was central to the Rask court's analysis. Id. at 697 ("Because the accident did not arise out of the ownership, maintenance, or use of any of the vehicles owned by [the tortfeasor] and insured by [the tortfeasor's insurance company], it would be inappropriate to look to those vehicles to determine whether the . . . vehicle involved in the accident was underinsured."). In contrast, here, Martin was the owner,

operator, and insurer of the vehicle involved in the accident. Martin's personal excess-liability policy also specifically referenced the 2001 Dodge pickup involved in the accident, labeled it a "covered vehicle," and referenced Martin's primary liability policy on that vehicle. The connection between the involved vehicle and Martin's excess-liability policy was *not* merely incidental as it was in <u>Rask</u>.

This connection is enough to distinguish this case from <u>Rask</u> and to make Martin's excess-liability policy relevant to the underinsurance calculations under section 26.1-40-15.1. The <u>Rask</u> court relied on statutory language to conclude that the policy in question was excluded. That same statutory language covers the excess-liability policy[4] here. The Jungs repeatedly characterize the inquiry as being whether the excess-liability policy is a "motor-vehicle-liability policy," but this reads a requirement into the statute that simply is not there. The statute only requires that the policy be a "bodily injury" policy that covers a motor vehicle; if the legislature intended to limit the analysis to traditional, primary motor-vehicle-liability policies, it could have done so. <u>See</u> <u>Farmers Union Mut. Ins. Co. v. Assoc. Elec. and Gas Ins. Servs. Ltd.</u>, 737 N.W.2d 253, 256 (N.D. 2007) (discussing interpretation of another North Dakota statute that included the term "motor vehicle liability insurance policy"). The question is *not* whether Martin's excess-liability policy is a motor-vehicle-liability policy. Rather, it is whether Martin's excess-liability policy is a "bodily injury" policy that covers the vehicle involved in the accident. We conclude that it is and that it does.

This is consistent with the approach adopted by other jurisdictions that use the gap method of defining underinsurance. The cases have consistently found that

---

[4]While the statute refers only to a singular policy, we do not read that as intended to limit the inquiry to a single primary automobile policy. Under North Dakota law, singular terms are assumed to include the plural unless a contrary intent is clear. N.D. Cent. Code Ann. § 1-01-35; <u>Beaudoin v. Texaco, Inc.</u>, 653 F. Supp. 512, 516 (D.N.D. 1987). We see no contrary intent and assume section 26.1-40-15.1 counts any "bodily injury" policy that covers the automobile.

personal-excess-liability policies held by the owner and operator of the at-fault vehicle count when determining whether that vehicle is underinsured. Penn. Gen. Ins. Co. v. Morris, 599 A.2d 1042, 1043-44 (R.I. 1991); Murphy v. Safety Ins. Co., 709 N.E.2d 410, 412 (Mass. 1999); State Farm Fire and Cas. Ins. Co. v. Sayles, 289 F.3d 181, 186-87 (2d Cir. 2002) (interpreting Connecticut law).

The Jungs' argument that an excess-liability policy should not count when determining underinsured status because the policy does not provide no-fault coverage is similarly unpersuasive. While there is a North Dakota statutory requirement that any "motor vehicle liability insurance policy" provide no-fault coverage, see Farmers Union, 737 N.W.2d at 256, as we discussed above, section 26.1-40-15.1 does not limit its reach to only "motor vehicle liability insurance" policies. The statutory language is broader, and we find no reason why it would not include a policy that undisputedly provides liability coverage for "bodily injury," caused by operation of the insured's vehicle merely because that policy does not have other characteristics of traditional motor-vehicle-liability polices. Further, as a policy matter, the availability of no-fault benefits appears to be irrelevant to determining whether a particular policy affects the underinsured status of a vehicle because UIM coverage is triggered only when the driver of that vehicle is legally responsible for the insured's damages.

We conclude that Martin's excess-liability policy was relevant to determining the underinsured status of his vehicle. Thus, as a matter of law, Martin's vehicle was not underinsured and, the Jungs were not entitled to coverage under the UIM endorsement.

The Jungs also argue that the district court erred by not certifying this question of state law to the North Dakota Supreme Court. We review the decision not to certify a question only to determine if the district court abused its discretion. Perkins v. Clark Equip. Co., 823 F. 2d 207, 209 (8th Cir. 1987). The district court did not abuse its discretion here. The Jungs chose to bring this case in federal court, and nearly two

years passed before they requested certification. In fact, the Jungs did not request certification until after the district court rendered summary judgment against them. We generally do not allow certification after a case has been decided.[5] Id. Further, federal courts have a duty to address matters of state law, even when that law is unsettled, Guillard v. Niagara Machine & Tool Works, 488 F.2d 20, 24 (8th Cir. 1973), and we see no particular reason that this case required certification. For these same reasons, we decline to certify the question to the North Dakota Supreme Court ourselves.

## III. CONCLUSION

We affirm.

_____

_____

[5]The Jungs argue that the district court committed an abuse of discretion by relying on an improper reason to deny their request for certification. In denying the Jungs' request for certification, the district court emphasized that the Jungs did not request certification until after the district court issued an order granting summary judgment. The Jungs argue that the district court should not have held this delay against them because, according to the Jungs, the North Dakota Supreme Court could not have answered a certified question before the district court order issued as there would not have been a case or controversy for the state court to decide. This is simply wrong. The North Dakota Supreme Court may answer a certified question prior to judgment, see N.D. R. App. P. 47, and the Jungs' delay in requesting certification was a proper factor for the district court to consider. Perkins, 823 F.2d at 209-10. The Jungs' argument to the contrary is meritless and appears to confuse certification from state-district courts with certification from federal courts.

-8-